**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                              No. 4:09CV00033 JLH

STATE OF ARKANSAS; MIKE BEEBE,
Governor of the State of Arkansas, in his official
capacity only; JOHN M. SELIG, Director of the
Arkansas Department of Human Services, in his official
capacity only; JAMES C. GREEN, Ph.D., Director
of the Arkansas Division of Developmental
Disabilities Services, in his official capacity only;
and CALVIN PRICE, Superintendent of the
Conway Human Development Center, in his
official capacity only                                                                    DEFENDANTS

## OPINION AND ORDER

The United States of America brought this action pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 (2006), *et seq.*, alleging in Count I that conditions at Conway Human Development Center are so deplorable as to violate the Fourteenth Amendment to the Constitution of the United States; in Count II that Conway Human Development Center violates the integration mandate of the Americans with Disabilities Act, 42 U.S.C. § 12132 (2006); and in Count III that Conway Human Development Center violates the rights of children guaranteed by the Individuals with Disabilities Education Act by failing to provide them with a free appropriate public education in the least restrictive environment, 20 U.S.C. § 1412(a) (2006). After a six-week trial, the Court found that Conway Human Development Center was in compliance with the Fourteenth Amendment; that the plaintiff failed to prove that Conway Human Development Center was in violation of the Americans with Disabilities Act; that Conway Human Development Center educated children in the least restrictive environment but failed to provide a free appropriate public education; and that no injunction was needed because the agency charged with enforcing the

Individuals with Disabilities Education Act, the Arkansas Department of Education, would ensure that Conway Human Development Center would come into compliance.  The defendants have now moved for an award of attorneys' fees and costs.

## I.

Generally, successful litigants must pay their own attorneys' fees unless a statute or contractual agreement provides otherwise.  *See, e.g.*, *Borntrager v. Cent. States Se. & Sw. Areas Pension Fund*, 577 F.3d 913, 924 (8th Cir. 2009) (citing *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448, 127 S. Ct. 1199, 1203, 167 L. Ed. 2d 178 (2007)).  In support of their motion for attorneys' fees, the defendants invoke a provision of the Civil Rights of Institutionalized Persons Act that provides: "In any action commenced under this section, the court may allow the prevailing party, other than the United States, a reasonable attorney's fee against the United States as part of the costs."  42 U.S.C. § 1997a(b) (2006).[1]  That provision, by use of the word *may*, grants the Court discretion to award a reasonable fee to the prevailing party, other than the United States, but does not explain the factors to be considered or the standards that should inform the Court's exercise of discretion.  *Cf. Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S. Ct. 694, 698, 54 L. Ed. 2d 648 (1978) (interpreting a similarly-worded attorney's fees provision and noting that the "question in the case before us is what standard should inform a district court's discretion in deciding whether to award attorney's fees to a successful *defendant*[.]").  In a decision resolving a case similar to the present one, the Eleventh Circuit observed, "there must be standards

---

[1] The defendants also cite Fed. R. Civ. P. 11, but they admittedly have not complied with the procedure mandated by Rule 11(c)(2), so the Court will not address this rule.

to guide the district court's exercise of discretion." *Johnson v. Florida*, 348 F.3d 1334, 1350 (11th Cir. 2003).

No controlling precedent specifies the standards that should inform a district court's exercise of discretion in determining whether to award attorneys' fees to a prevailing defendant pursuant to subsection 1997a(b). The defendants contend that a prevailing defendant is presumptively entitled to attorneys' fees in the absence of special circumstances, whereas the plaintiff contends that attorneys' fees should be awarded to a prevailing defendant only if the action was frivolous, unreasonable, or without foundation.

In *Christiansburg*, the Equal Employment Opportunity Commission unsuccessfully pursued a Title VII action against a private employer. 434 U.S. at 413-15, 98 S. Ct. at 696-97. After a successful summary judgment motion, the employer sought attorneys' fees under Title VII's attorneys' fees provision, which provided,

> In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

*Id.* The Supreme Court recognized that it has already settled upon the rule that a prevailing *plaintiff* in a civil rights case "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 416-17. The question in *Christiansburg*, however, was "what standard should inform a district court's discretion in deciding whether to award attorneys' fees to a successful *defendant* in a Title VII action." *Id.*

Because the attorney's fees section provided "no indication whatever of the circumstances under which either a plaintiff *or* a defendant should be entitled to attorney's fees[,]" the Court did not rely simply on the "plain meaning of the statute" to resolve the question before it. *Id.* at 418.

3

Instead, the Court pointed to "two strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff that are wholly absent in the case of a prevailing Title VII defendant." *Id.* "First . . . the plaintiff is the chosen instrument of Congress to vindicate " 'a policy that Congress considered of the highest priority.' " *Id.* (citing *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402, 88 S. Ct. 964, 966, 19 L. Ed. 2d 1263 (1968)). "Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* The Court also sifted through the sparse legislative history of the attorney's fees provision and found evidence that Congress intended "to make it easier for a plaintiff of limited means to bring a meritorious suit" and to " 'deter the bringing of lawsuits without foundation' by providing that the 'prevailing party'—be it plaintiff or defendant—could obtain legal fees.' " *Id.* at 420 (citing *Grubbs v. Butz*, 548 F.2d 973, 975 (D.C. Cir. 1976)). In light of these considerations, the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation[.]" *Id.* at 421.

In *Johnson*, the Eleventh Circuit has held that the Supreme Court's *Christiansburg* standard applies "to a claim for attorneys' fees under [the Civil Rights of Institutionalized Persons Act]." 348 F.3d at 1354. The Eleventh Circuit interpreted 42 U.S.C. § 1997c(d) (2006), which provides: "In any action in which the United States joins as an intervenor under this section, the court may allow the prevailing party, other than the United States, a reasonable attorney's fee against the United States as part of the costs." Subsection 1997c(d), which controlled in *Johnson*, differs from subsection 1997a(b), which controls here, in that section 1997c authorizes the Attorney General to intervene in actions seeking relief for institutionalized persons, whereas section 1997a authorizes

4

the Attorney General to institute civil actions to obtain relief for such persons.  Subsection 1997c(d)

also contains an additional sentence: "Nothing in this subsection precludes the award of attorney's

fees available under any other provisions of the United States Code."  Otherwise, the two subsections

are identical.  The parties here do not argue, nor is there any apparent reason to conclude, that

Congress intended different standards to apply to the effectively identical language of subsection

1997a(b) and subsection 1997c(d).

In support of their argument that the Court should not adopt the *Christiansburg* standard in

applying subsection 1997a(b), the defendants first point out that the Civil Rights of Institutionalized

Persons Act, unlike other civil rights statutes, only exists for the purpose of providing the United

States with standing; it does not create any substantive rights.  In addition, subsection 1997a(b)

specifically disallows an award of attorney's fees to the United States when it prevails.  It follows

that there can never be an attorney's fees award to a prevailing plaintiff under the Civil Rights of

Institutionalized Persons Act.  Therefore, the defendants urge, the Court should not interpret its

provisions in the same manner as traditional civil rights statutes.

Second, the defendants contend that the legislative history supports the conclusion that

attorney's fees may be awarded pursuant to subsection 1997a(b) simply if a defendant prevails.  The

defendants rely on the House conference report on the Civil Rights of Institutionalized Persons Act

which states, in pertinent part,

> In both the initiation and intervention sections, the Act makes clear the liability of the
> United States to opposing parties for attorneys' fees whenever it loses.  The award
> is discretionary with the court, and it is intended that the present standards used by
> the courts under the civil rights laws will apply.

H. Conf. Rep. No. 96-897, at 12 (1980), *reprinted at* 1980 U.S.C.C.A.N. 832, 837.  According to

the defendants, the "present standards" language refers to the standard set forward in *Piggie Park*,

namely, that fees should ordinarily be awarded to the prevailing party in the absence of special circumstances.  The defendants also point out that *Christiansburg* was decided only a few years before the Civil Rights of Institutionalized Persons Act was enacted[2] and argue that because a number of district court and circuit court decisions post-dating *Christiansburg* did not apply its standard, *Christiansburg* was not "the present standards used by the courts under the civil rights laws."[3]

Third, the defendants contend that the rationale of *Christiansburg* is based on policies that protect private plaintiffs who bring civil rights suits but do not apply to the Department of Justice, as, for example, the concern that the high cost of attorneys' fees might chill a private plaintiff's assertion of his civil rights.  Private plaintiffs do not bring suit pursuant to the Civil Rights of Institutionalized Persons Act, so, the defendants argue, the rationale behind the *Christiansburg* standard does not apply to subsection 1997a(b).

Finally, the defendants contend that *Geier v. Richardson*, 871 F.2d 1310 (6th Cir. 1989), supports imposition of the lower standard.  In *Geier*, the United States intervened in a Title IX desegregation case.  After lengthy and contentious litigation, all parties except for the United States

---

[2] However, the Senate report explicitly cites *Christiansburg* when stating that the Civil Rights of Institutionalized Persons Act attorneys' fees provisions are "similar to that found in Title VII of the Civil Rights Act of 1964."  S. Rep. No. 96-416, at 68 n.86 (1979), *reprinted at* 1980 U.S.C.C.A.N. 787, 832.

[3] The plaintiff notes that most of these cases were reversed on appeal for failing to use the correct standard, namely, the one laid down in *Christiansburg*.  Furthermore, a decision handed down by the Supreme Court becomes the law of the land, regardless of the prior state of the law or whether the decision has had time to percolate through the lower courts.  *Cf. Holmberg v. Parratt*, 548 F.2d 745, 749 (8th Cir. 1977) ("[T]he Supreme Court has the right to enunciate a single supreme law of the land[.]").  Therefore, by the time the Civil Rights of Institutionalized Persons Act was enacted, *Christiansburg* was the law of the land regarding the standards for a defendant's motion for attorney's fees in the civil rights context.

agreed to a consent decree.  The district court denied the United States' challenges, and awarded attorneys' fees to the private plaintiffs as prevailing parties.  The Sixth Circuit affirmed the district court's award of attorneys' fees.

These arguments are thoroughly and persuasively answered by the *Johnson* opinion.  348 F.3d at 1351-54.  The Court need not reiterate *Johnson*'s reasoning here but will restate the most compelling argument for the proposition that the *Christiansburg* standard applies.

It is a well-settled precept of statutory construction that statutory provisions that are substantially the same should be interpreted similarly.  *See In re Norfolk S. Ry. Co.*, 592 F.3d 907, 912 (8th Cir. 2010) (citing *Nijhawan v. Holder*, 557 U.S. 29, 129 S. Ct. 2294, 2301, 174 L. Ed. 2d 22 (2009) ("Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations.")); *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 758 n.2, 109 S. Ct. 2732, 2735 n.2, 105 L. Ed. 2d 639 (1989) ("We have stated in the past that fee-shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike.") (quoting *Northcross v. Memphis Bd. of Educ.*, 412 U.S. 427, 428, 93 S. Ct. 2201, 2202, 37 L. Ed. 2d 48 (1973)).  Title VII's attorney's fee provision, interpreted in *Christiansburg*, is substantially identical to subsection 1997a(b).  *Compare Christiansburg*, 434 U.S. at 414, n.1, 98 S. Ct. at 696, n.1 ("In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs[.]"), *with* 42 U.S.C. § 1997a(b) ("In any action commenced under this section, the court may allow the prevailing party, other than the United States, a reasonable attorney's fee against the United States as part of the costs.").

7

In accord with that basic rule of statutory construction, courts have applied the *Christiansburg* standard to numerous attorney's fees provisions outside of the Title VII context. *See*, *e.g.*, *Fox v. Vice*, --- U.S. ---, 131 S. Ct. 2205, 2215, 180 L. Ed. 2d 45 (2011) (*Christiansburg* standard applies to attorney's fees provision of section 1988 of Title 42 of the United States Code which states: "In any action or proceeding to enforce a provision of sections . . . of this title [or certain other titles] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ."); *No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 498 (5th Cir. 2001) (*Christiansburg* standard applies to attorney's fees provision of the Americans with Disabilities Act which states: "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . . ."); *Brooks v. Ctr. Park Assocs.*, 33 F.3d 585, 587 (6th Cir. 1994) (*Christiansburg* standard applies to attorney's fees provision of the Fair housing Act which states: "In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."); *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1354 n.1 (10th Cir. 1992) (Section 1988 standards apply to attorney's fees provision of the Rehabilitation Act which states: "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .").

Even if some of the policy considerations relevant to the issue of whether a prevailing defendant should recover attorneys' fees under these statutes are not relevant to subsection 1997a(b), the language of that subsection is substantially similar to the language of those statutes. Hence, they

should be interpreted similarly.   Therefore, this Court will interpret 42 U.S.C. § 1997a(b)

consistently with these statutes that are similarly worded, which means that the *Christiansburg*

standard will guide the exercise of the Court's discretion in deciding whether to award attorneys'

fees to the defendants.

## II.

The Eighth Circuit has summarized the *Christiansburg* standard as follows:

> A prevailing defendant . . . is entitled to attorney's fees only in very narrow
> circumstances.   A plaintiff should not be assessed his opponent's attorney's fees
> unless the district court finds that his claim was frivolous, unreasonable, or
> groundless, or that the plaintiff continued to litigate after it clearly became so.   Even
> allegations that, upon careful examination, prove legally insufficient to require a trial
> are not, for that reason alone, groundless, or without foundation as required by
> *Christiansburg*.   Rather, so long as the plaintiff has some basis for his claim, a
> prevailing defendant may not recover attorneys' fees.   Finally, we are mindful of the
> Supreme Court's admonition to avoid *post hoc* reasoning by concluding that, because
> a plaintiff did not ultimately prevail, his action must have been unreasonable or
> without foundation.

*Williams v. City of Carl Junction, Mo.*, 523 F.3d 841, 843 (8th Cir. 2008) (internal quotation marks

and citations omitted).   Applying the *Christiansburg* standard, as interpreted by the Eighth Circuit,

the Court exercises its discretion not to award attorneys' fees to the prevailing defendants in this

case.

Beginning the analysis with Count III, the claim that Conway Human Development Center

was in violation of the Individuals with Disabilities Education Act, the Court found that that claim

had merit.   Although the Court elected not to enter injunctive relief based upon testimony that the

Arkansas Department of Education would ensure that Conway Human Development Center came

into compliance with the act, by no means was the claim frivolous, unreasonable, or groundless.   In

fact, it appeared from the evidence that the Arkansas Department of Education initiated its review

of the program at Conway Human Development Center in response to the action brought by the plaintiff in this case.  The monitors from the Arkansas Department of Education obtained a copy of the report prepared by the plaintiff's expert, Susan Thibadeau, Ph.D., before beginning their investigation at the Center and used that report to guide their investigation.  As the Court found in its findings of fact following the trial, the monitors from the Arkansas Department of Education confirmed many, though not all, of Dr. Thibadeau's criticisms of the Center.  Thus, not only did the United States meet its burden of proof on the merits of this claim, but the corrective action mandated by the Arkansas Department of Education is also a direct result of the work from the United States in this action.

Although the Court found that the plaintiff failed to meet its burden of proof on the claim that the Conway Human Development Center violates the integration mandate of the Americans with Disabilities Act, neither was that claim frivolous, unreasonable, or groundless.  The plaintiff contended that the Center was not the least restrictive, most integrated setting appropriate for the disabled persons who are served there; that the Center failed to give adequate information to parents and guardians about less restrictive alternatives; and that the Center failed to exercise professional judgment in making its determinations as to whether the Center was the least restrictive setting for its residents.  The greater weight of evidence did not support those contentions, but they were not frivolous, unreasonable, or groundless.  The plaintiff's expert, Antoinette Richardson, and four officers of organizations that provide waiver services reviewed forty-six randomly selected individual program plans of residents of the Center and concluded that many, if not all of them, could be served through the waiver program.  Furthermore, Calvin Price, the superintendent of the Center, testified that perhaps every individual residing at the Center "could live in the community

if they had the appropriate resources." The plaintiff's evidence was convincing to that point, but the plaintiff failed to take the next step and present evidence that a waiver provider was the appropriate placement for a specific resident or that a specific resident would have a greater degree of interaction with nondisabled persons in the waiver program. That the plaintiff failed to make that showing does not, however, establish that the claim was frivolous, unreasonable, or groundless. The defendants have not proven that the plaintiff could not have made that showing had the next step been taken in the interrogation of witnesses. *Cf. Marquart v. Lodge 837*, 26 F.3d 842, 852 (8th Cir. 1994) ("a prevailing defendant must prove that a plaintiff's case is frivolous, unreasonable, or groundless.").

As to whether the staff at Conway Human Development Center were providing adequate information to parents and guardians regarding waiver services, and whether the staff at Conway Human Development Center were exercising professional judgment in deciding whether the Center is the least restrictive alternative for its residents, the evidence was in conflict. The United States presented evidence to show that staff members at Conway Human Development Center were not adequately informed regarding waiver services in the State of Arkansas and that they were failing to exercise professional judgment in making determinations regarding the least restrictive but, instead, were relying simply on the wishes of the parents and guardians of the residents. Again, while the Court found that the greater weight of the evidence was in favor of the defendants on these issues, the claims of the United States were supported by evidence and had some basis.

It should be noted that some of the evidence offered in defense of the allegations in Count II resulted from changes instituted at Conway Human Development Center shortly before trial. For example, in the spring of 2010 (some five or six months before trial), Conway Human Development Center for the first time invited all of the waiver providers in the State of Arkansas to the campus

so they could provide information about their services to parents and guardians.  That evidence was relevant and admissible; and it was considered by the Court in weighing the evidence.  Nevertheless, it would seem unfair to consider improvements made by Conway Human Development Center in response to this litigation and then find that the allegations by the plaintiff was frivolous, unreasonable, or groundless.

The more troubling issue relates to Count I, in which the plaintiff alleged that the conditions at Conway Human Development Center were so deplorable as to violate the Fourteenth Amendment. That claim included a broad based attack on many facets of the Center.  On the merits, it was the weakest of the three claims, which, in turn, means that it is the claim that presents the strongest case for an award of attorneys' fees under the *Christiansburg* standard.  Having carefully considered the evidence, weak though it was, the claim of the United States under the Fourteenth Amendment had some basis, so the Court will not award attorneys' fees.  The plaintiff presented two qualified experts, Johnny Lee Matson, Ph.D., and Ramasamy Manikam, Ph.D., who testified that the psychological services offered at the Center depart substantially from generally accepted standards in numerous respects.  *See Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S. Ct. 2452, 2462, 73 L. Ed. 2d 28 (1982).  The plaintiff also presented the testimony of two highly qualified experts, Jodie Holloway, M.D., and Edwin J. Mikkelsen, M.D.., who testified that the medical services offered by Conway Human Development Center departed from generally accepted standards in numerous respects.  The Court discussed the relevant evidence at length in its findings of fact entered after the trial, so that evidence need not be recited here.  Suffice it to say that, while the claim of the United States, as noted, was weak, it was not without some basis.

Moreover, as with Count II, in weighing the evidence the Court considered conditions at Conway Human Development Center as they were at the time of trial, which included improvements made at the Center in response to or in preparation for this litigation. For example, in response to the investigation by the Department of Justice, Conway Human Development Center engaged a consultant, Kevin Walsh, Ph.D., to assist in improving the Center's psychology department.  Some of the evidence upon which the Court relied in finding for the defendants  included improvements in the psychology department instituted at the behest of Dr. Walsh.  As noted in the findings of fact, the use of mechanical restraints at Conway Human Development Center was troubling.  Due at least in part to changes made at the Center in response to the Department of Justice investigation, the Center instituted changes in its practices that resulted in a marked decline in the use of mechanical restraints.  Again, it would be unfair to rely on the evidence that the lives of residents at the Center had improved in response to allegations by the Department of Justice and then find that the claims of the Department of Justice were frivolous, unreasonable, or groundless.

For the reasons stated, the Court will not award attorneys' fees to the defendants.

## III.

Under the Federal Rules of Civil Procedure, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  The Eighth Circuit has held that Rule 54(d) codifies a rebuttable presumption that the prevailing party is entitled to costs.  *Leonard v. Sw. Bell Corp. Disability Income Plan*, 408 F.3d 528, 533 (8th Cir. 2005) (citing *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 696 (8th Cir. 2001)).  The costs available under the rule are stated in 28 U.S.C. § 1920:

A judge or clerk of any court of the United States may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensations of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (2006), *amended by* Pub. L. No. 110-406, § 6, 122 Stat. 4291, 4292 (2008).  Not all expenses of litigation are costs taxable against the losing party, and within the statutory framework of costs eligible to be taxed, the district court has discretion in determining and awarding costs in a given case.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42, 107 S. Ct. 2494, 2497, 96 L. Ed. 2d 385 (1987); *Pershern v. Fiatallis N. Am., Inc.*, 834 F.2d 136, 140 (8th Cir. 1987).  The district courts may not tax costs beyond those expressly authorized in section 1920.  *Crawford*, 482 U.S. at 445, 107 S. Ct. at 2499.  "Section 1920 imposes 'rigid controls on cost-shifting in federal courts . . . .'"  *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002) (per curiam) (citing *Crawford*, 482 U.S. at 444, 107 S. Ct. at 2499).

The parties have no material dispute regarding the amount of costs taxable under 28 U.S.C. § 1920.  The defendants calculated the taxable costs as $149,545.01, whereas, according to the plaintiff's tally, the recoverable costs come to $150,585.01.  The difference of $1,040 related to the costs for service of process, which, upon reflection, the defendants concede are properly taxable as costs.  Thus, there is no dispute that the taxable costs come to $150,585.01.

The plaintiff contends that the defendants are not entitled to any costs, however, for two reasons. First, the plaintiff contends that it prevailed on Count III, which was the count that alleged violations of the Individuals with Disabilities Education Act. The plaintiff therefore argues that the Court should decline to award costs inasmuch as both parties prevailed on some aspect of the claims. That argument fails. The Supreme Court has held that to be a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers' Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S. Ct. 1486, 1493, 103 L. Ed. 2d 866 (1989). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties[.]" *Id*. at 792-93, 109 S. Ct. at 1494. "Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992). Moreover, "the change in the relationship must be 'judicially sanctioned'[.]" *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003). By this test, the plaintiff did not prevail on any count because the plaintiff obtained no judicially sanctioned relief. Although the Court may have discretion to deny an award of costs or reduce an award of costs for a party that prevailed on only a portion of the claims, here, the Court does not believe that it would be appropriate to reduce costs awarded to the defendants pursuant to section 1920.

Second, the plaintiff contends that the declaration submitted by defense counsel did not comply with 28 U.S.C. § 1924 (2006), inasmuch as it did not expressly say that each cost "is correct and has been necessarily incurred in the case and that the services for which fees were charged were actually and necessarily performed." The plaintiff is correct that the declaration submitted by defense counsel does not use the precise language required by section 1924. Defense counsel did,

as noted, submit a declaration in support of the motion for attorneys' fees and costs; and the defendants filed with the declaration appendices in which costs are itemized in detail, along with attachments that include each invoice for each expenditure sought to be recovered as a taxable cost. The supporting documentation is sufficiently detailed that the plaintiff could not only verify the amount of costs taxable under section 1920 but, as noted above, find an additional $1,040 in taxable costs that the defendants had overlooked.

In their reply, the defendants cite *The Cincinnati Ins. Co. v. Dynamic Dev. Grp., LLC*, 336 F. Supp. 2d 552 (M.D.N.C. 2004), where the court noted that section 1924 only requires an affidavit "before any bill of costs is taxed." *Id*. at 572 (quoting *Piraino v. Int'l Orientation Res.*, No. 94C493, 1997 WL 222948, at *2 (N.D. Ill. Apr. 30, 1997)). The court therefore granted the prevailing party leave to amend the bill of costs by supplying an affidavit that complied with section 1924. Adopting the reasoning from those decisions, without deciding whether the declaration already submitted by defense counsel is insufficient, the Court grants the defendants leave to amend the bill of costs within seven days from the entry of this Opinion and Order by filing an affidavit that uses the precise language of 28 U.S.C. § 1924.

## CONCLUSION

For the reasons stated, the defendants' motion for award of attorneys' fees and costs is GRANTED IN PART and DENIED IN PART. Documents #232 and #238. The motion for an award of attorneys' fees and litigation expenses is denied. The defendants are given leave to amend their motion for an award of costs by submitting an affidavit that uses the precise language of

28 U.S.C. § 1924 within seven days from the entry of this Opinion and Order.[4]  If the defendants file

such an affidavit within seven days from the entry of this Opinion and Order, the Court will enter

an award of costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C.

§ 1920 in the amount of $150,585.00.

      IT IS SO ORDERED this 6th day of February, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[4] Appendices and attachments need not be resubmitted.  The previously submitted appendices and attachments may be incorporated by reference.